James F. McCann, Appellee, v. The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago, Appellant.

## Gen. No. 31,586.

MUNICIPAL CORPORATIONS—*basis for ascertaining amount of policeman's annuity.* The provision of Cahill's St. ch. 24, ¶ 863, that in figuring the annuity of retiring policemen the salary used as a basis shall not be placed at over $2,600, is subject to the exception found in Cahill's St. ch. 24, ¶ 907, that such salary should be the actual salary in respect to present employees of the age of 50 or over who had served more than 20 years in the department and who resign or are discharged after the first day of the month of January of the first year after the year in which the act becomes effective.

Appeal by defendant from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Affirmed. Opinion filed November 23, 1927.

FRANCIS X. BUSCH, Corporation Counsel, and GEORGE F. MULLIGAN, Assistant Corporation Counsel, for appellant; CORA B. HIRTZEL, Assistant Corporation Counsel, of counsel.

DAY & BEILMAN and JAMES A. DALEY, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

This matter comes to this court on an appeal from an order of the circuit court of Cook county, directing that the officers of the Retirement Board of the Policemen's Annuity and Benefit Fund of the city of Chicago pay the petitioner, James F. McCann, a pension as prayed for in the petition filed in said cause, and further, to pay to said petitioner certain amounts of back salary, incurred by reason of the failure of the board to pay the full amount of the pension, as found by the trial court to have been due.

The facts are practically undisputed. It appears that James F. McCann, the petitioner below, was born in Illinois in 1872; became a member of the Department of Police of the City of Chicago in June, 1894, at which time he was duly appointed a patrolman in said department and entered upon his duties as such; that petitioner, from the time of his appointment, continued in active service and was paid by the city of Chicago the regular salary of a patrolman until May, 1895, when, by an order of the General Superintendent of Police, he, with seven hundred and fifty other patrolmen was dropped from the payroll and from service in said department. On October 26, 1897, he was again appointed a patrolman in the Department

of Police under "An Act to Regulate Civil Service in Cities," approved and in force March 20, 1895, and adopted by the city of Chicago on July 1, 1895. The facts further show that the petitioner served as patrolman until March 21, 1898, at which time he was promoted and duly appointed to the position of Desk Sergeant in the Department of Police, where he continued to serve until 1908, at which time he was duly appointed to the position of lieutenant in said Department of Police. This position he held until February 25, 1922, when he was promoted and appointed to the position of captain of police in said department, which position he held until the 31st day of October, 1923, at which time he tendered his resignation from the Police Department, and it was duly accepted. It is undisputed that during this entire time he was actively employed in and connected with the Police Department and received his salary during that period. From February 23, 1922, until October 31, 1923, the date of his resignation, his salary as a captain of police was $3,500 per annum. It further appears that all proper deductions were taxed and made from his salary as a police officer, for the benefit fund, and that he in all respects complied with the regulations of the department governing and concerning this particular fund. It is further apparent from the facts that at the time of his resignation from the service, he was over fifty years of age and had served as an officer in the Police Department of the city of Chicago continuously for more than twenty years. After the retirement of petitioner, he applied to the retirement board for the annuity coming to him under the Act entitled, "An Act to provide for the creation, setting apart, maintenance and administration of the policemen's annuity and benefit fund in cities having a population exceeding two hundred thousand inhabitants," approved June 29, 1921, and in force July 1, 1921; and at a regular meeting of the members of that board, held on

January 21, 1924, a resolution was adopted granting petitioner an annuity of $1,750, payable in equal monthly instalments of $145.83. It appears from the facts, as charged in the pleadings and admitted by the answer, that the regular annual salary of a captain of police—the position held by petitioner at the time of his severance from service—was $3,500 per annum, and at the meeting of the Retirement Board, as hereinbefore stated, his annuity was granted to him based on an amount equal to one-half of his annual salary. This annuity was paid until November 30, 1924—a period of thirteen months—and on December 18, 1924, at another meeting of the board another resolution was adopted, by which this annuity was reduced to $1,300; and the facts disclose that the board has withheld from petitioner any payments on account of said annuity, on the theory that because of an over-payment they were entitled to retain future payments to satisfy the amounts claimed by the board to have been illegally paid out. The action of the board changing the amount of the payments under the benefit fund, is based on the proposition that the statute limits the amount which any beneficiary could receive out of any fund, to the amount not to exceed one-half of $2,600.

The defendant below, Retirement Board of the Policemen's Annuity and Benefit Fund of the city of Chicago, claims that the original resolution and payments made thereunder were made through a mistake of law, and that the amount payable, as a matter of law, should not exceed the amount of $1,300, as provided in section 12 of the Act of 1921, Cahill's St. ch. 24, ¶ 863. Petitioner's position is that the act of the Retirement Board, in the first instance, was correct, in fixing the amount at one-half of his then present salary at the time of his retirement, or $1,750.

It becomes necessary, for the purpose of decision, to consider two sections of the act. Section 12, Cahill's St. ch. 24, ¶ 863, reads as follows:

"§ 12. The following words and terms as used in this Act shall mean as follows, respectively:

" 'Policeman': Any person appointed and sworn or designated by law as a policeman of such city, and who has served, or is serving, or shall serve in regularly constituted police department of such city as a policeman, or policewoman, or police patrol driver, or police operator, or secretary of such police department, or police dog catcher, or police kennelman, or police matron, and member of the police force of such police department.

" 'Further Entrant': Any policeman who shall be employed as a policeman of such city for the first time on or after the first day in the month of January of the first year after the year in which this Act shall come in force and effect in such city.

" 'Present Employee': Any policeman who shall be in the employment of such city as a policeman thereof on the thirty-first day in the month of December of the year in which this Act shall come in force and effect in such city.

" 'Active Policeman': Any policeman employed as a policeman by such city.

" 'Salary': Annual salary: *Provided* that two thousand six hundred dollars ($2,600.00) shall be the maximum amount of the annual salary of any policeman which shall be considered for any purpose under this Act. Any amount of annual salary in excess of said amount of two thousand six hundred dollars ($2,600.00) which any policeman shall receive shall not be considered *for any purpose under this Act.*"

Section 28, Cahill's St. ch. 24, ¶ 879, provides for a computation of any benefit granted, based on the American Experience Table of Mortality. This section, however, is not applicable in view of the fact that petitioner's salary at the time of his severance from the service was over $2,600, so that in any event he would receive not less than $1,300, and for that rea-

son we are not concerned with the provisions of that particular section. Section 55 of the act, Cahill's St. ch. 24, ¶ 907, and the section relied upon by petitioner, is in words and figures as follows:

"§ 55. Notwithstanding the provisions of any foregoing section or sections of this Act, any present employee who shall resign or be discharged from the service on or after the first day in the month of January of the first year after the year in which this Act shall come in force and effect in such city, and after he shall have completed twenty (20) or more years of service and for whom the amount of annuity provided in accordance with the foregoing provisions of this Act shall be less than the amount stated hereinafter in this section shall have a right to receive annuity *as follows:*

"Any *such* present employee who shall be *fifty* (50) *or more years of age* at the time of his resignation or discharge from the service shall have a right to receive annuity, from and after the date of such resignation or discharge, of an amount equal to fifty (50) per cent of the salary of such present employee as such salary shall be at the time of his resignation or discharge from the service.

"Any such present employee who shall be less than fifty (50) years of age at the time he shall resign or be discharged from the service shall have a right to receive annuity, from and after the date upon which he shall become fifty (50) years of age, of an amount equal to fifty (50) per cent of the salary of such present employee as such salary shall be at the time of his resignation or discharge from the service but not in excess of the sum of nine hundred dollars ($900.00) a year."

It is argued on behalf of the Retirement Board that it is the general rule in the construction of statutes that any early and declaratory sections, stating particular facts with reference to the statute, are controlling throughout its entire interpretation and it is

not necessary to restate those particular statements of the statute in later sections, citing *Peoria & P. U. Ry. Co. v. People ex rel. Jaeger*, 144 Ill. 458, and Lewis Sutherland's Statutory Construction, 2d ed., Vol. II, § 382.

On the other hand it is argued for petitioner below that § 55, Cahill's St. ch. 24, ¶ 907, is controlling by reason of the fact that it is expressly applicable to present employees over fifty years of age at the time of retirement, who have served over twenty years in the employ of the Police Department, and specifically excepts them from the general provisions in regard to all others referred to in the enactment. It is argued further on behalf of petitioner below, that section 55, being a later section of the enactment, is controlling, based on the rule of construction that later sections of a statute are presumed to have been enacted with reference to all prior sections thereof and, therefore, with a full consideration of what is contained in all previous sections.

The language of § 55, Cahill's St. ch. 24, ¶ 907, is plain, clear and unambiguous. It provides that any "present employee who shall resign or be discharged from the service on or after the first day of the month in January of the first year after the year in which this Act shall come in force and effect in such city, and after he shall have completed twenty (20) or more years of service and for whom the amount of annuity provided in accordance with the foregoing provisions of this Act shall be less than the amount stated hereinafter in this section shall have a right to receive annuity as follows:" It then provides that: "Any such present employee who shall be fifty (50) or more years of age at the time of his resignation or discharge from the service shall have a right to receive annuity, from and after the date of such resignation and discharge, of an amount equal to fifty (50) per cent of the salary of such present employee as such *salary*

*shall be at the time of his resignation or discharge from the service.''* Moreover, the language, ''Notwithstanding the provisions of any foregoing section or sections of this Act,'' at the very beginning of § 55, Cahill's St. ch. 24, ¶ 907, would clearly indicate the intention of the legislature to exempt from previous provisions of the enactment anything which might tend to restrict the rights of beneficiaries of the kind and character expressly referred to in § 55 of the Act. It would appear that the language used was such as to exempt from the general provisions, as outlined in § 12, Cahill's St. ch. 24, ¶ 863, present employees of the age of fifty or more, who had served more than twenty years in the department, who shall resign or be discharged after the first day of the month of January of the first year after the year in which the act shall become in force and effect, all of which requirements were present in the case of the petitioner. This seems to have been the view of the board in passing upon the meaning of the enactment at the time they originally fixed the amount of the benefit which petitioner was entitled to receive, and we are of the opinion that this view, as originally adopted by the Retirement Board of the Policemen's Annuity and Benefit Fund of the city of Chicago was the correct view of the statute, and it also appears to have been the view adopted by the trial court in granting the writ of mandamus directed to the officials of that board.

For the reasons given in this opinion, the judgment of the circuit court will be affirmed.

*Judgment affirmed.*

TAYLOR, P. J., and HOLDOM, J., concur.